ELECTRONIC

**May 8, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

D.C.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **09-80707-CiV-DIMITROULEAS/SNOW**

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, a foreign
corporation,

     Plaintiff,

v.

LAVELLE CONSTRUCTION &
DEVELOPMENT CORP., a Florida
corporation, AMERICAN HOME
ASSURANCE COMPANY, a wholly
owned subsidiary of AMERICAN
INTERNATIONAL GROUP, INC., a
foreign corporation, GARY
NICKLAUS and AMY NICKLAUS,

     Defendants.

_____/

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, CRUM & FORSTER SPECIALTY INSURANCE COMPANY ("C&F Specialty"), files this Complaint against Defendants, LAVELLE CONSTRUCTION & DEVELOPMENT CORP. ("Lavelle"), a Florida corporation, AMERICAN HOME ASSURANCE COMPANY ("American Home Assurance"), a wholly owned subsidiary of AMERICAN INTERNATIONAL GROUP, INC., a foreign corporation, GARY NICKLAUS and AMY NICKLAUS (collectively, "the Nicklauses"), and alleges as follows:

### NATURE OF THE ACTION

1.    This is an action seeking declaratory and other relief pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAYVIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

1 of 156

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

3.     The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.), exclusive of interest and costs.

4.     Venue is proper in the Southern District of Florida since all material events occurred, and the subject policies of insurance were issued, in this district.

5.     All conditions precedent to the institution of this action have occurred, been performed or have been waived.

## THE PARTIES

6.     C&F Specialty is an Arizona corporation with its statutory home office in Phoenix, Arizona.  C&F Specialty is thus a citizen of Arizona.

7.     Lavelle is a Florida corporation with its principal place of business in Palm Beach County, Florida.  Lavelle is thus a citizen of Florida.

8.     American Home Assurance is a New York corporation with its principal place of business in New York.  American Home Assurance is thus a citizen of New York.

9.     The Nicklauses are individuals who reside in, and are citizens of, Palm Beach County, Florida.

## COMMON ALLEGATIONS

10.     On or about August 11, 2006, the Nicklauses entered into a contract with Lavelle, wherein Lavelle, a general contractor, was to construct a single-family residence for the Nicklauses located at Lot 13, 181 Bear's Club Drive, Jupiter, Florida 33477 (hereinafter referred to as "the residence").  (A copy of the contract and addendum to the contract is attached herein as Exhibit "A".)

2

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

2 of 156

11.     In accordance with the contract, the Nickluases were required to obtain, and did in fact obtain, first-party property insurance for the residence being constructed. Said property insurance was issued by American Home Assurance to the Nicklauses.

12.     Construction on the residence began on or about October 26, 2006 and was ongoing until August 20, 2008, when a fire broke out inside the residence. At the time of the fire, the residence was approximately 98% completed, and it had not received a certificate of occupancy.

13.     As a result of the fire, a large portion of the structure was destroyed and the house is considered a total loss.

14.     Subsequent to the fire, American Home Assurance has made and/or will be making payments to the Nicklauses pursuant to the policy of insurance issued by American Home Assurance to the Nicklauses.

15.     C&F Specialty issued to Lavelle commercial general liability insurance policy number GLO 131162, with a policy period from July 1, 2008 to July 1, 2009. (A copy of the policy, hereinafter referred to as the "primary policy", is attached herein as Exhibit "B".) C&F Specialty also issued to Lavelle commercial excess liability policy number XSO 101053, with a policy period from July 1, 2008 to July 1, 2009. (A copy of the policy, hereinafter referred to as the "excess policy", is attached herein as Exhibit "C".)

16.     C & F Specialty has received notice that American Home Assurance has made a claim, or will be making a claim, against Lavelle and others for reimbursement of all payments American Home Assurance has made or will make for the loss under its first-party property insurance. The claimed total loss is, upon information and belief, in excess of $4,000,000.00.

3

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE,  SUITE 2900,  80 SOUTHWEST 8TH STREET,  MIAMI, FLORIDA 33130  ·  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

3 of 156

17.    The coverage form in the primary policy contains several relevant property damage exclusions which provide that the insurance does not apply to:

**j.     Damage to Property**

'Property damage' to:

\* \* \*

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard'.

With respect to the foregoing exclusions, the coverage form also contains the following relevant definitions:

16.    'Products-completed operations hazard':

a.    Includes all 'bodily injury' and property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

4

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

4 of 156

**(c)**      When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.**      Does not include 'bodily injury' or 'property damage' arising out of:

**(1)**      The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the 'loading or unloading' of that vehicle by any insured;

**(2)**      The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)**      Products or operations for which the classification, listed in the Declarations or in the policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

\* \* \*

**22.**      'Your work':

**a.**      Means:

**(1)**      Work or operations performed by you or on your behalf; and

**(2)**      Materials, parts or equipment furnished in connection with such work or operations.

**b.**      Includes:

**(1)**      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work; and

**(2)**      The providing of or failure to provide warnings or instructions.

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

18.    In addition, the primary policy contains a "Prior Operations and Completed Operations Exclusion" endorsement (form CFSGL180 (1005)). The endorsement provides as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**PRIOR OPERATIONS AND COMPLETED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to 'bodily injury', 'property damage', or 'personal and advertising injury' arising out of 'your work' or operations, including completed operations, performed by you or on your behalf prior to 07/01/08.

19.    The insuring grant in the excess policy coverage form (XS OCC (01 07)) provides in pertinent part as follows:

I.    **COVERAGE**

We will pay on behalf of the Insured the 'Ultimate Net Loss':

1.    In excess of all 'Underlying Insurance',

2.    Provided the injury or offense takes place during the Policy Period of this policy, and

3.    Only after all 'Underlying Insurance' has been exhausted by payments of the limits of such insurance for losses arising out of occurrences insured by all of the policies designated in the Declarations as 'Underlying Insurance'.

If any 'Underlying Insurance' does not pay for a loss for reasons other than the exhaustion of an aggregate limit of insurance, then we shall not pay such loss.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

6

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

6 of 156

The amount we pay is limited as described in the IV. Limits of Insurance.

\* \* \*

The Agreements, Definitions, Terms, Conditions, and Exclusions of the 'Controlling Underlying Insurance' scheduled in Item 5. of the Declarations, in effect at the inception date of this policy, apply to this coverage unless:

1.   They are inconsistent with provisions of this policy; or

2.   There are provisions in this policy for which a similar provision is not contained in the 'Controlling Underlying Insurance'; or

3.   They relate to premium, subrogation, any obligation to defend, the payment of expenses, Limits of Insurance, cancellation or any renewal agreement.

With respect to the exceptions described in 1., 2. or 3. above, the provisions of this policy will apply.

Section III of the excess policy coverage form contains the following definitions:

A.   'Controlling Underlying Insurance' means the policy or policies of insurance as stated in Item 5.A. of the Declarations.

B.   'Ultimate Net Loss' means the amount of the principal sum, award or verdict actually paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with the written consent of us, after making proper deduction for all recoveries and salvages.

Defense and supplemental expense payments shall be included within the 'Ultimate Net Loss', provided that such expense payments shall be included within the agreements, terms, conditions, and limits of insurance of any 'Underlying Insurance' in accordance with the DEFENSE AND SUPPLEMENTAL PAYMENTS CONDITION.

C.   'Underlying Insurance' means the policy or policies of insurance as described in Item 5. of the Declarations, including 'Controlling Underlying Insurance'.

7

20.     The excess policy coverage form also contains an exclusion, which provides that the insurance does not apply to the following:

### C.      CONTROLLING UNDERLYING INSURANCE

Any liability excluded by 'controlling Underlying Insurance'.

21.     The excess policy further contains a "Contractors Limitation Endorsement" (form XS 2135 02 08).  The endorsement modifies the policy by stating in relevant part as follows:

B.      The following exclusions are added to the policy:

DAMAGE TO PROPERTY

This insurance does not apply to 'Property Damage' to:

\* \* \*

3.      that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'Property Damage' arises out of those operations; or,

4.      real or personal property in the care, custody and control of any insured. . . .

\* \* \*

C.      with respect to any loss, including 'Bodily Injury', 'Property Damage', 'Personal and Advertising Injury' arising out of liability you assume under contract, coverage is excluded under this policy if coverage is not provided by all of the 'Underlying Insurance'. If the loss or 'Bodily Injury', 'Property Damage' or 'Personal and Advertising Injury' is otherwise excluded by the terms of this policy or this Contractors Limitation Endorsement, the coverage is excluded, regardless of whether coverage is provided in the 'Underlying Insurance'.

22.     This is an action brought pursuant to 28 U.S.C §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 for the purposes of determining questions of actual controversy between the parties as more fully stated herein.

8

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  ·  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

8 of 156

23.     Lavelle contends that C&F Specialty is obligated to provide Lavelle a defense under the primary and excess policies with respect to any claims or suits which have been, or may be, instituted against Lavelle in connection with the destruction of the residence and its contents as a result of the fire.  C&F Specialty is defending Lavelle under a reservation of rights.

24.     Lavelle and the other Defendants contend that C&F Specialty is also obligated to indemnify Lavelle under the primary and excess policies with respect to any claims or suits which have been, or may be, instituted against Lavelle in connection with the destruction of the residence and its contents as a result of the fire.

25.     The primary and excess policies do not provide coverage under the circumstances of this loss.

26.     An actual controversy exists among C&F Specialty and the Defendants within the jurisdiction of this Court and involving the rights and liabilities under the contracts of insurance, which controversy may be determined by a judgment of this Court without the necessity of other suits.

27.     C&F Specialty is in doubt as to its rights, duties and responsibilities under the primary and excess policies identified in paragraph 15, above.

28.     C&F Specialty has complied with all conditions precedent to bringing this action.

### **COUNT I – THE PRIMARY POLICY (GLO 131162)**

29.     C&F Specialty incorporates and re-alleges paragraphs 1 through 28 as if fully set forth herein.

30.     There is no coverage under primary policy number GLO 131162 because the policy contains exclusions providing that the insurance does not apply to property damage as follows:

9

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130  •  TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

9 of 156

**j.**     **Damage to Property**

'Property damage' to:

* * *

(4)     Personal property in the care, custody or control of the insured;

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

31.     In addition, there is no coverage under primary policy number GLO 131162 with respect to any property damage to the residence arising from Lavelle's or any of its subcontractor's work or operations performed prior to July 1, 2008, the inception date of the policy, pursuant to the "Prior Operations and Completed Operations Exclusion" endorsement, which states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**PRIOR OPERATIONS AND COMPLETED OPERATIONS
EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to 'bodily injury', 'property damage', or 'personal and advertising injury' arising out of 'your work' or operations, including completed operations, performed by you or on your behalf prior to 07/01/08.

WHEREFORE, C&F Specialty respectfully requests this Court to:

a.     Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to primary policy number GLO 131162;

10

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

10 of 156

b.     Find and declare that C&F Specialty has no obligation to defend Lavelle under primary policy number GLO 131162 with respect to any claims or suits brought forth in connection with property damage arising out of the destruction of the residence due to the fire;

c.     Find and declare that C&F Specialty has no obligation to indemnify Lavelle or the other Defendants under primary policy number GLO 131162 with respect to any property damage arising out of the destruction of the residence due to the fire; and

d.     Grant C&F Specialty the costs of this action and such further relief as this Court deems equitable, just and proper under the evidence and circumstances of this proceeding.

### COUNT II-EXCESS POLICY (XSO 101053)

32.     C&F Specialty incorporates and re-alleges paragraphs 1 through 28 as if fully set forth herein.

33.     There is no coverage under excess policy number XSO 101053 based on an exclusion which provides that to the extent coverage is precluded under the primary policy, it is also excluded under the excess policy. This exclusion states that the insurance does not apply to the following:

**C.     CONTROLLING UNDERLYING INSURANCE**

Any liability excluded by 'controlling Underlying Insurance'.

34.     In addition, there is no coverage under excess policy number XSO 101053 because the excess policy contains a "Contractors Limitation Endorsement" (form XS 2135 02 08) which excludes coverage for property damage. This endorsement states in relevant part:

B.     The following exclusions are added to the policy:

DAMAGE TO PROPERTY

This insurance does not apply to 'Property Damage' to:

11

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

11 of 156

\* \* \*

3.   that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'Property Damage' arises out of those operations; or,

4.   real or personal property in the care, custody and control of any insured. . . .

\* \* \*

C.   with respect to any loss, including 'Bodily Injury', 'Property Damage', 'Personal and Advertising Injury' arising out of liability you assume under contract, coverage is excluded under this policy if coverage is not provided by all of the 'Underlying Insurance'. If the loss or 'Bodily Injury', 'Property Damage' or 'Personal and Advertising Injury' is otherwise excluded by the terms of this policy or this Contractors Limitation Endorsement, the coverage is excluded, regardless of whether coverage is provided in the 'Underlying Insurance'.

WHEREFORE, C&F Specialty respectfully requests this Court to:

a.   Take jurisdiction of this matter and determine and adjudicate the rights and liabilities of the parties with respect to excess policy number XSO 101053.

b.   Find and declare that C&F Specialty has no obligation to defend Lavelle under excess policy number XSO 101053 with respect to any claims or suits brought forth in connection with property damage arising out of the destruction of the residence due to the fire;

c.   Find and declare that C&F Specialty has no obligation to indemnify Lavelle or the other Defendants under excess policy number XSO 101053 with respect to any property damage arising out of the destruction of the residence due to the fire; and

d.   Grant C&F Specialty the costs of this action and such further relief as this Court deems equitable, just and proper under the evidence and circumstances of this proceeding.

12

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE, SUITE 2900, 80 SOUTHWEST 8TH STREET, MIAMI, FLORIDA 33130 • TELEPHONE (305) 446-2646
\\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

12 of 156

Dated *MAY  8*        , 2009.

**THORNTON, DAVIS & FEIN, P.A.**
Attorneys for Plaintiff
Brickell BayView Centre, Suite 2900
80 Southwest 8th Street
Miami, Florida 33130
Tel:  (305) 446-2646
Fax:  (305) 441-2374

By: _____

**HOLLY S. HARVEY**
harvey@tdflaw.com
Fla. Bar No. 970190
**MICHAEL C. GORDON**
gordon@tdflaw.com
Fla. Bar No. 0149284

13

THORNTON, DAVIS & FEIN, P.A., ATTORNEYS AT LAW

BRICKELL BAY VIEW CENTRE,  SUITE 2900,  80 SOUTHWEST 8TH STREET,  MIAMI,  FLORIDA 33130   •   TELEPHONE (305) 446-2646
13 of 156   \\TDFMIAWS01\CPSHARE\CPWIN\History\090328_0001\F4E.10FBB Complaint 01

## Lavelle Construction & Development Corp.
### 801 Maplewood Drive, Suite 3
### Jupiter, Florida 33458
### (561) 748-6844     (561) 748-6845 Fax

# AGREEMENT FOR BUILDING OF A DWELLING

## COST PLUS CONTRACT

IN THIS AGREEMENT, the words I, Me, My, and Mine mean the Buyers:

NAME:            Gary and Amy Nicklaus

ADDRESS:
CITY:
STATE:           Florida
ZIP:                          PHONE:      512-9830

and the words YOU and YOUR mean LAVELLE CONSTRUCTION AND DEVELOPMENT CORPORATION, a Florida corporation as BUILDER. The words WE and OUR mean all parties to this Agreement. This Agreement spells out our rights and obligations in the construction by you and purchase by me of the      Single Family Residence     at            The Bear's Club            and known as designated as:

LOT:                    Lot 13

ADDRESS:              181 Bear's Club Drive
                       Jupiter, FL 33477

as shown on a plat known and designated as:
                       recorded in Plat Book _____, Page _____ of the Public Records of Palm Beach County, Florida.

## A.  CONTRACT COST AND PAYMENT SCHEDULE

I shall pay you in current funds for your performance of the Contract, the Contract Sum consisting of the Cost of the Work (as specified below) plus the Contractor's Fee determined as follows:

| | | |
|---|---|---|
| Contractor's Fee | = | Cost of work x 15% |
| Cost of Work | = | All work relating to the construction of the bid residence as indicated in the Bid Sheet (Exhibit B) |

The following items are not included in this contract and are to be supplied by me at my expense:

| | | |
|---|---|---|
| -Builders Risk Insurance | -Decorator Drawings | -Closet Shelv. |
| -Decorative Light Fixtures/Fans | -Subsurface Investigation | |
| -Pilings | -Demucking | |

Note**Any items can be supplied as agreed upon between Owner and builder per the payment schedule above.

Payments

Payments will be made as follows:

| | |
|---|---|
| Deposit | $ 200,000.00 |
| * Monthly | Cost of Work + Contractor's Fee + Material Deposits Needed + any developer fee due per section "N", less 10% of deposit for first 10 draws. |

* Requisitions for payment will be sent monthly.  Payments shall be made within 10 days of the date of the requisitions.

Any payment due to you (including draws, extras, final payment, etc.) shall accrue interest as 18% per annum if not paid when due.

As provided in Section D hereof, within 15 days after the issuance of a Certificate of Occupancy, you and I shall prepare a punch-list of items requiring repair, completion or adjustment.  There shall be withheld from the final payment provided for above an amount determined in accordance with Section D, which withheld amount shall be released to you in accordance with the provisions of Section D.

Any disputes between us with respect to the adequacy of the work with respect to which a payment is due, whether any such payment is due and the estimated cost of completing or correcting deficient work shall be resolved by Paradigm Architects and you and I agree that their determination regarding any such dispute shall be binding upon us.

At the time each installment is to be paid to you pursuant to the payment schedule, you shall present to me an affidavit according to the Florida Construction lien law through the date of the immediately proceeding

draw, that there is no person to whom a debt is due for labor or materials furnished in the erection, alteration or repair of the building, by virtue of an agreement with you, or by your consent, or with a person having actual or apparent authority from or otherwise rightfully acting for you.

I hereby agree that I shall not occupy the dwelling being constructed by you until I have paid to you the final installment set forth above, less any retainage for punch-list items.

## B.    NO-LIEN AFFIDAVIT

At the time the retainage for punch-list work is released to you in full, you shall present to me a no-lien affidavit satisfactory to my title insurer certifying that there is no person to whom a debt is due for labor or materials furnished in the erection, alteration or repair of the dwelling by virtue of an agreement with you, or by your consent, or with a person having actual or apparent authority from or otherwise rightfully acting for you or, with respect to persons to whom amounts are due for such labor or materials. You will also present, at the time of the occupancy, a final survey and all manufacturers' warranties that you have received, and a certificate regarding treatment against termites. Upon receipt of the final draw provided for in Section A, above, you shall also present to me a Certificate of Occupancy for my home, and/or the approval by the appropriate governmental authority that my home is ready for occupancy and that I may immediately move into it.

## C.    COMMENCEMENT OF CONSTRUCTION

You shall, within 15 days following the date of this Agreement, apply for a construction and other required governmental permits necessary before you can begin construction on my home. Within 15 days after receipt of such permits and payment to you of any amount due from me, you shall commence construction of my home in accordance with this Agreement.

## D.    COMPLETION OF CONSTRUCTION/STANDARD OF PERFORMANCE

You agree to complete the construction of my home in good, workmanlike and substantial manner, and we agree for the purposes of this Agreement that said terms shall mean work equal to the standards exhibited by previous homes you constructed that were viewed by me. You agree to construct my home in substantial accordance with the plans prepared by  Paradigm Architects. Bid Sheet described on Exhibit "B" and Allowances also in Exhibit "B", prepared by Lavelle Construction and Development Corporation (collectively "Plans and Specifications"). You will have the right, when in your opinion it is necessary or expedient, and after you notify us, to substitute materials of equal or better quality for those required by the Plans and Specifications. You shall not be liable for any errors, omissions or inconsistencies in the Plans and Specifications.

Within 15 days after the issuance of a Certificate of Occupancy, you and your representative and I and my representative will conduct a walkthrough of the dwelling and will prepare a punch-list of those items which we mutually agree require repair, completion, or adjustment. We will both sign the list, and you will complete the items on the list as soon thereafter as practicable, but in any event within 45 days unless availability of parts and materials makes such performance impossible. I will have the right, at the time the punch-list is executed, if any of these items are not completed, to withhold a sum of money equal to 100% of the estimated cost of completing said items. Upon each item being completed a portion of such money equal to the cost of the completed item, as determined by me in my reasonable discretion, shall be immediately paid to you. These monies shall be held by my attorney, in his escrow account. Any dispute between us as to what items should be on the punch-list, the adequacy of any remedial action with respect to such items and the appropriate amount to be withheld pending the completion of such remedial action shall be resolved by:

as provided for in Section A above.

You hereby warrant that the work performed by you thereunder shall be free from defects in materials or workmanship and that the dwelling and its component parts shall operate properly, under normal

conditions, for one (1) year from the date the Certificate of Occupancy was issued, provided written notice a claim was given by me to you within such one (1) year period, including, but not limited to, in particular, the following items and that you will promptly service them or cause them to be serviced during that one (1) year period at no cost or expense to me:

    (a)    The roof and roof flashing, except when any damage to them is caused by acts or circumstances beyond your control:

    (b)    The air conditioning/heating system, subject to the condition that I maintain it in accordance with the manufacturer's recommendations;

provided, however, that you shall not be responsible for the proper operation of equipment and appliances installed by your or under your direction so long as you shall have properly assigned to me all manufacturers warranties with respect to such equipment, such equipment shall have been properly installed and maintained by you prior to my taking possession of the dwelling and such equipment conforms to the Plans and Specifications. For additional warranty information see Exhibit "C" attached. The warranties contained in this paragraph are in lieu of all other warranties, stated or otherwise, expressed or implied. To the extent allowed by law, implied warranties of merchantability and fitness are specifically excluded from this contract.

You shall complete construction and deliver my home _570_ days after the commencement of construction, subject, however to delays caused by the unavailability of materials, strikes, governmental restrictions, change orders or other events which are beyond your control ("force majeure"). The above date is given for my benefit and convenience, but I agree that you will not be responsible for the delays referred to above. For purposes hereof, completion of construction shall mean the issuance of a Certificate of Occupancy for the residence.

Following receipt of notice from you that my home has been completed and that the Certificate of Occupancy has been issued, I will attend an inspection of the residence at the time designated by you and reasonable acceptable to me, but in any event within fifteen days after the issuance of the certificate of occupancy.

## E.    FURNISHINGS AND DECORATIONS:

I shall have the opportunity to select certain items to be installed in my home. I will make my selections within _20_ days from my receipt of your written request to make such selections and I shall deliver a list of my selections to you at that time. If I fail to make any selections within the required time, then I authorize you to make the selections on my behalf and to install the items selected by you. I understand that color grading or dye lots may vary, and that grades of items received by you for installation in my home may vary from those selected due to shortages, discontinuance of colors, different dye lots, or color run variations. I agree that such variances will not be a basis upon which I may refuse to complete this transaction.

I UNDERSTAND AND AGREE THAT FOR REASONS OF SAFETY, AND IN ORDER TO COMPLY WITH INSURANCE REQUIREMENT IMPOSED ON YOU, THAT NEITHER I NOR ANY AGENT OF MINE SHALL BE PERMITTED TO ENTER THE PROPERTY AT ANY TIME UNLESS ACCOMPANIED BY YOUR REPRESENTATIVE OR AGENT, OR UNTIL AFTER THE CLOSING OF THE TRANSACTION. YOU AGREE TO MAKE ALL NECESSARY ARRANGEMENTS TO PERMIT ME AND MY AGENT TO ENTER THE PROPERTY FROM TIME TO TIME TO INSPECT THE WORK, NOT WITHSTANDING THE FOREGOING ACKNOWLEDGMENT BY ME.

## F.    CHANGES IN WORK:

Without invalidating this Agreement, I may order changes in the work contemplated hereby, and you shall be obligated to comply with such changes so long as any such change does not involve a substantial

reworking or demolition of work already completed by your thereunder. All such changes shall be authorized by a written change order executed by me, shall extend the time for performance of this Agreement set forth in Section D hereof by a period of time equal to time reasonably required to complete such change order and shall result in a change in the total contract price set forth in paragraph A hereof in an amount equal to the actual cost of materials and labor involved in completing such change, plus 20% of such amount, less any out-of-pocket cost savings resulting from such change, if any. Any disputes with respect to change orders shall be referred to the agreed upon third party for resolution, and their determination of the matter shall be binding upon parties.

## G.   CORRECTION OF THE WORK:

You shall promptly correct any defective work performed by you and paid for by me, which I or my representative reasonably determined to be defective or failing to conform to the requirements of this Agreement (or so determined to be defective or non-conforming by an agreed upon third party in the event of a dispute between us with respect thereto), so long as you receive written notice within a period of one year after the execution of the punch-list; provided, however, that you shall not be obligated thereunder with respect to those items which were observable at the time of the inspection of the dwelling provided for in Section D hereof and were not included in the punch-list, nor for those items caused by my failure to observe proper maintenance procedures after taking occupancy of the dwelling. The provisions of this Section shall apply to work done by subcontractors as well as by you.

## H.   FIRE OR OTHER CASUALTY:

I shall be responsible for purchasing and maintaining liability insurance and, as to my opinion, may maintain such insurance as will protect me against claims which arise from operations under this Agreement.

I shall purchase and maintain property insurance upon the entire work at the site to the full insurable value thereof. This insurance shall include my interest, your interest and those of any Subcontractors in the work and shall insure against the perils of fire and extend coverage and shall include "all Risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief. Any loss insured pursuant to this paragraph is to be adjusted by me and made payable to me as trustee for the insured, as their interest may appear including the interest of any lender. Certificates or copies of such insurance shall be provided to you prior to commencement of the work. You shall have and maintain in full force and effect during the term of this Agreement liability insurance for protection for claims under Worker's or Workmen's Compensation Acts and other employee benefit acts, claims for damages because of bodily injury, including death, and from claims for damages, other than to the work itself, to property which may arise out of or result from your operations under this Agreement, whether such operations be by you, or by any subcontractor or anyone directly or indirectly employed by any of you. This insurance shall be written for not less than $1 million per occurrence, or as required by law, whichever amount is the greater, and shall include contractual liability insurance applicable to your obligations thereunder. Certificates of such insurance shall be provided to me prior to the commencement of the work.

Any loss or damage to my home by fire, storm, or other casualty shall not void or impair our Agreement, but all such loss or damage shall be my responsibility and shall be repaired at my expense. All loss or damage caused by or due to any act or omission of you or your subcontractors or materialmen shall be your responsibility.

## I.   DEFAULT OF BUYER:

If I fail to make any payment due thereunder for a period of ten (10) days after receipt of written notice, other than because of a bona fide dispute between us with respect to the work performed by you thereunder or whether a payment is in fact due pursuant to paragraph A hereof, or if I fail to observe any other material obligation to be observed by me thereunder, then you may terminate this Agreement and recover from me

payment for all work completed and for which you have not previously received payment, for any proven loss sustained by you upon any materials, equipment, tools and construction equipment and machinery purchased by you specifically for work contemplated hereby, plus any associated lost profit.

## J.   DEFAULT OF BUILDER:

If you fail or neglect to carry out the work in accordance with this Agreement or fail to perform any provision of this Agreement, I shall provide thirty (30) days' written notice to you specifying the nature of your default and, if you shall not have cured such default within such 30 day period, I may, without prejudice to any other remedy I may have, make good the deficiencies causing such default, and may deduct the cost thereof from any payment then or thereafter due you, or, at my option, I may terminate this Agreement and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by you and may finish the construction of my home by whatever method I may deem expedient. In the event that the cost of completing the work contemplated hereby following a default by you is greater than the amount remaining to be paid to you thereunder, then you shall be liable to me for such excess, and shall pay such amount to me within 15 days following my written request therefor, which shall be accompanied by reasonable verification of the amounts spent by me to so complete the work.

## K.   ENTIRE AGREEMENT:

We understand that this Agreement sets forth the entire understanding between us and that it supersedes any and all prior understandings and Agreements. Further, we agree that no oral representations or statement shall be considered a part of this Agreement, that it may not be amended hereafter or modified except in writing and as signed by both of us. I acknowledge no statements or estimates of any nature whatever, written or oral, made by you, your agents or brokers or other people, except as specifically set forth herein or in the other documents to which we have referred in this Agreement

## L.   NO CLOUD ON TITLE:

You agree that this contract shall not be recorded in the Official Records of Palm Beach County, and that this contract shall not operate as a lien or encumbrance against the property. Should you violate this provision and record this Agreement, I will have the right to cancel this contract, retain all work, be relieved from any obligation to make any further payments to you thereunder or on account of the work contemplated hereby and recover from you all amounts previously paid to you thereunder, plus any damages that I sustain on account of the violation of the paragraph.

## M.   BROKER COMMISSION:

You and I represent and warrant that there is no real estate broker involved in this transaction who is entitled to a commission.

We both jointly and severally agree to and shall indemnify and hold each other harmless from any costs, expenses or liabilities either of us shall incur as a result of a breach by us of the representation and warranty set forth in the Section M.

## N.   DEVELOPER NOT A PARTY TO THIS AGREEMENT:

I acknowledge that you are responsible to ____The Bear's Club Realty____ for an amount of money designated "market support fee". This amount is equal to 8% of the selling price and will be paid by me when such fees become due from The Bear's Club.

## O.   MISCELLANEOUS PROVISIONS:

Any notices required to be given under this Agreement shall be in writing and sent by certified mail return receipt requested, to me at the address shown on the first page of this Agreement, _____ or to you at your address as shown on the first page of this Agreement.

This Agreement contains our entire agreement, and no agent, representative, salesman, or officer of any party hereto has authority to make or has made any statement, agreement, representation, either oral or written, in connection with this Agreement modifying, adding to or changing the terms and conditions.  No dealings between us shall be permitted to contradict, vary and/or modify the terms of our Agreement.  You will not be responsible or liable for any agreement, condition or stipulation not specifically set forth in this Agreement relating to or affecting my property.  No modification of this Agreement shall be binding unless made in writing and signed by both of us.  Faxed copies of this or other documents will be deemed legal.

In the event that either of us shall institute litigation regarding this Agreement, regardless of whether it is brought by or against you, the prevailing party shall be entitled to recover all costs incurred, including its attorney's fees, as set forth above.  I understand and agree that the venue of any such litigation shall be Palm Beach County, Florida.  Both parties agree to waive their right to trial by jury.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the date herein indicated:

DATED: _8/11/06_____
        August 11, 2006

Signed, sealed and delivered
in the presence of:

                                        LAVELLE CONSTRUCTION AND
                                        DEVELOPMENT CORPORATION,
                                        a Florida Corporation

WITNESS

_____      BY: _____
                                        President

_____           _____
                                        Gary Nicklaus

_____           _____
                                        Amy Nicklaus

/server/bear's club jobs/Gary Nicklaus/costplus contract

September 13, 2006

## ADDENDUM TO CONSTRUCTION CONTRACT

CONTRACTOR:        Lavelle Construction and Development Corporation

OWNER:        Gary and Amy Nicklaus

PROJECT:        [Single Family Home as shown on Drawings
and Specifications]

DATE:        September 13, 2006

1.    General.  This Addendum supersedes and controls the Contract (and all documents incorporated therein) to which it is attached.  In the event of any conflict between the provisions hereof and the provisions of the Contract, this Addendum shall prevail.  The Contract and this Addendum shall constitute, and be construed as, a single instrument.

2.    Scope of the Work.

    2.1    The Contractor shall furnish all of the materials and perform all of the "Work" described in the Plans and Specifications and shall do everything required in order to complete the "Project" described therein.

3.    Payments.  In addition to the requirements set forth in the Contract, payments may be withheld by the Owner on account of (i) defective Work not remedied, (ii) claims filed in connection with the Work, (iii)  failure of the Contractor to make payments properly to subcontractors or for labor, materials or equipment or (iv)  unsatisfactory performance of the Work by Contractor.

4.    Change Orders.

4.1     The Owner and the Contractor agree that the Contract (as amended hereby) represents the entire agreement between the Owner and the Contractor and supersedes all prior and contemporaneous negotiations, understandings and agreements, written or oral, between the parties. The Contract shall not be amended or modified, and no waiver of any provision of the Contract shall be effective, unless set forth in a formal Change Order.

4.2     With respect to any change order that results in a change in the scope of the Work, the cost of said change shall be the sum of the cost of the change plus fifteen percent (15%) profit.

5.     Lien Waivers.

5.1     In accordance with the requirements of Florida law, a Notice of Commencement shall be recorded prior to commencement of construction and after any construction loan mortgage.

5.2     Upon each draw request, Contractor shall execute and deliver its "Affidavit of Payment". At the final draw request *and upon payment in full to Contractor*, Contractor shall deliver to the Owner (i) an Affidavit of Payment, (ii) a Final Release and Lien Waiver as to the General Contractor; and (iii) a Final Release and Lien Waiver as to each subcontractor who filed a Notice to Owner.

5.3     The Contractor shall allow the Owner, the Architect and the holder of any construction loan mortgage ("Construction Lender") or their agents, servants or employees to inspect all material and Work at all times and shall, after receiving written notice of defective Work and materials, whether complete or incomplete, proceed to *remedy* all work and materials *which are truly defective* and, if materials are rendered unfit for use, the Contractor shall replace such materials at his own cost and expense. *Owner, Architect and Construction Lender agree that any and all work deemed to be defective will be promptly reported to Contractor to allow correction of the same.*

6.     Risk of Loss.

2

6.1     Subject only to the provisions of any insurance policy required hereunder, the Contractor shall assume all risk of loss from fire or other damage or destruction *caused by Contractor or its' Subcontractors* until such time as the Project has been completed and Contractor has fulfilled all its duties, obligations and performed all Work in accordance with the terms and conditions of the Contract.

6.2     The Contractor assumes full and complete responsibility for the Work.   The Contractor is familiar with the Property and has made all investigations (including soil conditions and all applicable laws and private restrictions) necessary to undertake the Work.

7.     Financial Information.  Upon request of the Construction Lender, Contractor shall deliver to the Construction Lender evidence of its financial strength and capability in form and substance reasonably acceptable to the Construction Lender; *but this Contract and the covenants and obligations of Owner are not contingent upon Contractor's financial strength or "capability".*

8.     Indemnification and Public Liability Insurance.

8.1     The Contractor shall indemnify and hold the Owner harmless from any and all claims whatsoever on account of injuries to or death of any persons or damage to any property where such injury, death or damage arises out of or in connection with the *negligent or wrongful act or omission of Contractor, its Agent, Employees or Subcontractors.*  To insure performance of this condition, prior to the commencement of any Work hereunder the Contractor shall have delivered to the Owner evidence of public liability insurance in the amount of *$1,000,000.00,* naming Owner as additional insured and in form and substance acceptable to Owner. S*o long as Contractor provides the insurance required hereunder, it shall have no liability in excess thereof.*

3

8.2     Owner shall provide Builder's Risk Insurance in completed value form with extended coverage and duly endorsed to show the interest of the Owner, the Contractor and any Construction Lender.

8.3     Without limiting the generality of the foregoing, the Contractor shall be responsible for the acts and omissions of all his employees and all subcontractors, their agents and employees and all other persons, performing any of the Work under a contract with the Contractor.

8.4     Contractor and each subcontractor shall purchase and maintain such insurance as will protect it from claims under the Worker's Compensation Act, and other employee benefit acts, from claims or damages to property which may arise out of, or result from Contractor's operations under this Contract, whether such operations be by itself or by any subcontractor or anyone directly or indirectly employed by any of them.  This insurance shall be written for not less than any limits of liability specified, or required by law, whichever is greater, and which shall include contractual liability insurance as applicable to Contractor's obligations as provided herein.

8.5     Any insurance required to be issued hereunder shall include the interests of Owner, Contractor, subcontractors and sub-subcontractors in the work and shall insure against the perils of fire, extended coverage, vandalism and malicious mischief.

8.6     Any insured losses to be adjusted between Owner and Contractor and/or made payable to Owner and Contractor, are subject to the requirements of the Construction Lender.

9.      Guaranty Matters.

9.1     The Contractor agrees to transfer and assign to the Owner *any* warranties of subcontractors, manufacturers and suppliers of equipment used in connection with the Project or installed by the Contractor in or about the Project, and the Contractor shall cooperate with the Owner

4

in the enforcement of such warranties; provided, however, that the assignment of such warranties shall not relieve the Contractor from any obligations hereunder.

9.2     The guarantee set forth in the Contract shall be construed to modify *and* limit  the rights *and* actions which the Owner may otherwise have against the Contractor by law or statute, or in equity.

10.     Miscellaneous Covenants of the Contractor.

10.1     The Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the Work. (Cost of Construction).

10.2     The Contractor shall at all times keep the Property free from accumulated waste materials or rubbish caused by its operations.  At the completion of the Project, the Contractor shall remove all of its men and materials from the Project and leave the Property in broom-clean "move-in" condition.

11.     Remedies of the Owner.

11.1     If the Contractor at any time prior to the completion of the Work (i) abandons or ceases work thereon or fails to carry on the construction of the Project with due diligence and dispatch, in accordance with the terms of the Contract, or (ii)  deviates from the requirements set forth in the Specifications or the Drawings without  Owners consent, or (iii)  otherwise fails to comply with the terms hereof, and such event continues for a period of *ten (10)* days after *written* notice thereof is given to Contractor; any such occurrence shall be an "Event of Default"  and the Owner, at its option, may without further notice to the Contractor forthwith enter into possession of the Property and perform any and all work and labor reasonably necessary to complete construction

5

of the Project and take whatever other action may be necessary or desirable, in the reasonable opinion of the Owner, to complete the Project as provided herein.

11.2 In connection with any Event of Default, Owner shall be entitled to seek damages from Contractor for all additional costs due to such Default, including those arising from Contractor's removal from the job or discontinuance of the Work. *In connection with any wrongful termination by Owner, Contractor shall be entitled to seek damages from Owner for lost profits and all other damages allowed by law.*

11.3 The prevailing party in any litigation (or arbitration) under the Contract shall be entitled to court costs and reasonable attorneys' fees.

12. <u>Liquidated Damages</u>.
    12.1 *Deleted*

13. <u>Limitation of Obligation of the Owner</u>. The Contractor covenants and agrees not to do any act or thing prohibited by the terms hereof, and the parties hereto expressly agree that each of the following events shall constitute an additional "Event of Default" hereunder in which event, in addition to all other rights and remedies hereunder, all obligations on the part of the Owner to make any further payments hereunder shall, if the Owner so elects, cease and terminate; provided, however, that after the happening of any such Event, the Owner shall have the right to make payments to the Contractor without becoming liable to make any other or further payments:

(a) If the Contractor makes any assignment of any interest herein without the prior written consent of the Owner, or if as a result of any act or failure to act by the Contractor, the Property or the Project are encumbered in any way without the written consent of the Owner; *and such encumbrance is not promptly removed by Contractor;* or

6

(b)   If there is filed by or against the Contractor a petition in bankruptcy or a petition for the appointment of a receiver or trustee of any property of the Contractor, or if the Contractor files a petition for arrangement, reorganization, dissolution or similar relief under any of the provisions of the National Bankruptcy Act or of any similar law, state, federal or foreign, or if the Contractor makes a general assignment for the benefit of creditors or makes any insolvency assignment or is adjudged insolvent by any court of competent jurisdiction; or

(c)   *Deleted*

(d)   If the Contractor does not permit the Owner, or the Construction Lender or their agents, consultants or employees to enter upon the Property and inspect the work; or

(e)   *Deleted*

(f)   If the Contractor fails to comply with any requirement of any governmental authority *with respect to the project*, having jurisdiction within 30 days after notice in writing of such requirement given by the Owner to the Contractor; or

(g)   If the Contractor executes any security agreements granting a security interest on any materials, fixtures or articles used in the construction of the Project or articles of personal property placed on the Property, or if any such materials, fixtures or articles are purchased in conditional sale transactions or otherwise so that the ownership thereof will not vest unconditionally in the Owner, free from encumbrance, upon completion of construction of the work; or if the Contractor does not furnish to the Owner, if required, the contracts, bills of sale, statements, receipted vouchers and agreements, or any of them, under which the Contractor claims title to such materials, fixtures and articles; or

(h)   *Deleted*

7

14.     Successors and Assigns.  The Contract and the covenants and conditions herein contained shall be binding upon and inure to the benefit of the Owner and the Contractor and their respective successors and assigns; provided, however, that (i) the Contractor *and the Owner* shall not make any assignment of the Contract, in whole or in part, whether by operation of law or otherwise, without the prior written consent of the *other*; and (ii) the Owner shall not (except to the Construction Lender) make any assignment thereof without the approval of the Contractor, which approval shall not be unreasonably withheld or delayed.

15.     Contractor.  Contractor represents and warrants to Owner that (i) it is qualified to do business and licensed as a general contractor in the State of Florida, and (ii) it is solvent and financially capable of performing its obligations hereunder.

16.     Title.  Contractor warrants that title to all Work, materials and equipment will pass to the Owner upon incorporation into the Project.  Upon payment to Contractor as provided herein, such title shall be free and clear of all liens, claims, security interests and encumbrances.

17.     Payments by Contractor.  *Provided that Owner timely pays Contractor the amounts due to Contractor under the Contract,* Contractor shall promptly pay each subcontractor and materialman involved in the Work and shall indemnify and hold Owner and the Construction Lender harmless from any and all claims in connection therewith.

18.     Compliance.

18.1    Contractor warrants that all Work hereunder, including, but not limited to, the disposal of any waste and the installation of any toxic materials (e.g., friable asbestos) shall be undertaken and completed in accordance with all applicable laws and private restrictions.

18.2    Contractor shall obtain all government approvals and permits required for the Work.

8

19.    <u>Construction Lender</u>.  Contractor agrees to cooperate with all of Construction Lender's *reasonable* requirements and the Contract expressly incorporates the construction loan documents *after review and approval by Contractor* and procedures by reference; provided, however, that such documents and procedures shall be substantially similar to those utilized by other lenders in the area.

20.    <u>Cost of the Work</u>.  The Cost of the Work shall include only those costs and expenses required for completion of the Work in accordance with the Plans and Specifications, *any changes initiated by Owner* and which have been or will be paid by the Contractor.  The Cost of the Work shall be charged to the Owner at the rates prevailing in the location of the performance of the Work and shall be at rates not higher than those charged to the Contractor's most favoured customers.  The following items constitute the Cost of the Work if they are incurred by the Contractor in the performance of the Work:

a.    Communications expenses for telephone (long distance), package express and other similar expenses when incurred in connection with the Work.

b.    The cost of items which are used in the performance of the Work including tools, supplies, equipment and materials,

c.    Cost of removing debris.

d.    Cost (including transportation) of equipment, supplies and material to be incorporated into the Work.

e.    The cost of preventing or mitigating an emergency affecting the safety of persons or property.

f.    The cost of subcontracted work so long as this work is performed under bona fide subcontracts.

9

*RECOMMENDED THAT WHENEVER A SPECIFIC PROBLEM ARISES, YOU CONSULT AN ATTORNEY.*

26.  *Notice of Consumer Rights Under The Construction Industry Recovery Fund.* *Payment may be available from The Construction Industries Recovery Fund if you lose money on a project performed under contract, where the loss results from specified violations of Florida law by a state-licensed Contractor. For information about The Recovery Fund and filing a claim, contact The Florida Construction Industry Licensing Board at the following telephone number and address: Construction Industries Licensing Board 7960 Arlington Expressway, Suite 300, Jacksonville, Florida 32211-7467 Phone (904) 359-6310*

WITNESSES:

Name:

Name:

Name: Robert Sample

Name: Donna L. Doty

CONTRACTOR:

LAVELLE CONSTRUCTION AND DEVELOPMENT CORPORATION

By: _____
Name: Ronald J. Palladino
Title: PRES.

OWNERS:

By: _____
Name: Gary Nicklaus

By: _____
Name: Amy Nicklaus

Server/LCDC Bear's Club/Nicklaus Gary/NicklausAddendumConstructionContractrevised9-13-06.doc

12

Exhibit "B"

LAVELLE CONSTRUCTION AND DEVELOPMENT CORP.
801 Maplewood Drive, Suite 3
Jupiter, FL 33458
561-748-6844   fax 561-748-6845

BID SHEET
revised 8/11/06

JOB NAME: Mr. & Mrs. Gary Nicklaus

JOB ADDRESS: Lot 13, The Bear's Club Main House Only

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | **GENERAL CONDITIONS** | | | | |
| 01010 | survey | 3,700.00 | | estimate | thru final |
| 01020 | drawings & specs | 1,200.00 | | ALLOWANCE for prints | arch/eng drawings by Owner |
| 01030 | engineering | 1,000.00 | | | framing inspection |
| 01040 | perc test | | | | |
| 01050 | soil boring test | 2,100.00 | | estimate | borings, compaction, stem wall, etc. |
| 01060 | sewer connect/septic tank | | | Encon | by developer |
| 01070 | water meter/well pump | 8,000.00 | | Jupiter-water estimate increas | 1" meter (for 1-1/2" meter add $7500) |
| 01080 | utilities | 4,000.00 | | estimate | temp power, water, A/C |
| 01090 | chemical toilets | 2,520.00 | | estimate | 18 months @$90 + 2nd for 10 months |
| 01200 | building permit | 27,500.00 | | estimate-Town of Jupiter | added $2500 POA fee |
| 01210 | capitol improvement fee | | | | incl in 01200 |
| 01300 | trash removal | 10,000.00 | | estimate | dumpsters & labor |
| 01310 | final clean up | 5,000.00 | | estimate | entire interior/exterior |
| 01320 | site trailer | 4,500.00 | | estimate | |
| 01330 | temp. fencing | 500.00 | | estimate | silt fence |
| 01340 | misc. labor | 5,500.00 | | estimate | clean up, etc. |
| | **SITEWORK** | | | | |
| 02005 | demolition | | | | |
| 02010 | excavating/grading | 6,000.00 | | estimate | |
| 02020 | tree removal | 15,000.00 | | ALLOWANCE | remove & haul |
| 02030 | lot fill | 32,000.00 | | ALLOWANCE | 3500 @ 7/cy (fill & place) |
| 02050 | compaction | 4,500.00 | | estimate | rental & labor |
| 02060 | soil treatment | 3,400.00 | | estimate | .13/sf soil treat, 2.50 if centricon |
| 02070 | footing tractor time | | | | incl. in 03010 |

JOB NAME: Mr. & Mrs. Gary Nicklaus

JOB ADDRESS: Lot 13, The Bear's Club Main House Only

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| 02080 | final grading | 3,500.00 | | estimate | 50 hrs @ $65/hr |
| 02100 | landscape allowance/spec | 70,000.00 | | ALLOWANCE - reduced | |
| 02110 | sprinkler system | 18,000.00 | | ALLOWANCE | |
| 02120 | irrigation pump & well | 1,500.00 | | ALLOWANCE | |
| | **CONCRETE** | | | | |
| 03005 | shell | | | | |
| 03010 | slab concrete | 84,862.00 | | Sun Deck - **Bid** | complete slab-no patio |
| 03020 | pump mix concrete | | | incl. in 03010 | beam in 06300 |
| 03030 | pump cost | | | incl. in 03010 | beam in 06300 |
| 03040 | light weight/special conc | | | | |
| 03050 | walks, patios, steps | | | | |
| 03080 | driveways & walkways | 12,500.00 | | estimate | 9000 sf @ $4/sf |
| 03100 | concrete finish | 36,000.00 | | ALLOWANCE | incl. in 03010 (patio extra) |
| 03110 | special finish | 1,000.00 | | estimate | 2nd floor epicore/hollow core |
| 03120 | concrete sealer | 30,000.00 | | estimate | none |
| 03200 | misc. concrete items | | | | gypcrete/cut saw/etc. |
| 03210 | cylindrical column forms | 3,500.00 | | estimate | |
| | **MASONRY** | | | | |
| 04010 | structural walls | | | | 4 course stem wall |
| 04020 | fireplace | 66,000.00 | | estimate | (2) fireplaces, doors,logs & mantels |
| 04030 | exterior brick/stone | 25,000.00 | | ALLOWANCE | 2220 sf stone + precast sills |
| 04040 | interior brick/stone | 95,000.00 | | estimate | wood columns see 06050 |
| 04060 | planters/privacy walls | | | NIC | |
| 04100 | glass block | 4,000.00 | | | |
| | **METAL WORK** | | | | |
| 05010 | foundation steel | | | | incl. in 03010 |
| 05030 | column steel | | | | incl. in 06300 |
| 05040 | beam steel | | | | incl. in 06300 |
| 05050 | misc. steel items | | | | straps,redheads,bolts,embeds,etc. |
| 05060 | aluminum/steel posts | 3,000.00 | | estimate | incl. in 06300 |
| 05070 | welding | | | | |
| 05100 | ornamental metals | 15,000.00 | | estimate | exterior rail/window grates/awn.supp. 120 lf @ $85/lf + (2) grates |

JOB NAME: Mr. & Mrs. Gary Nicklaus

JOB ADDRESS: Lot 13, The Bear's Club Main House Only

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | **LUMBER,CARP.,MILL.,TRUSS** | | | | |
| 06010 | complete lumber estimate | 15,000.00 | | estimate | rough lumber (most incl. in 06300) |
| 06050 | finish trim lumber | 120,000.00 | | estimate | base,case,doors,crown |
| 06060 | interior doors | | | | incl. in 06050 |
| 06070 | exterior doors | | | | incl. in 08030 |
| 06080 | front door allowance | 12,000.00 | | ALLOWANCE | incl. installation |
| 06090 | garage doors & openers | 11,000.00 | | estimate | metal doors Dade Co. (wood incl-trim) |
| 06100 | wood den | 30,000.00 | | ALLOWANCE  reduced | library cabinetry |
| 06110 | stairs and railing | 50,000.00 | | ALLOWANCE | 2 stairs & int. rail (incl. tr & risers) |
| 06120 | misc. millwork | 10,000.00 | | ALLOWANCE | trellis work |
| 06130 | cabinet allowance | 125,000.00 | | ALLOWANCE | all cabinets (NO TOPS) |
| 06140 | closet built-ins | - | | NIC | By Owner |
| 06200 | hardware allowance | 6,500.00 | | ALLOWANCE  reduced | incl $1000 front door |
| 06210 | finish carpentry | 110,000.00 | | estimate | int & ext trim labor |
| 06230 | safe | | | | not included |
| 06300 | carpentry labor | 340,000.00 | | Premier Shell - **Bid** | rough thru roof/misc punch/conc/steel |
| 06400 | roof trusses | 25,000.00 | | TJ Truss - **Bid** | |
| 06410 | wood beams | | | | incl in trim 06050 |
| 06450 | crane for steel | | | | incl. in 06300 |
| | **MOISTURE PROTECTION** | | | | |
| 07010 | tile/shake roof | 165,000.00 | | estimate | Barrel Tile |
| 07100 | rain gutters | 4,000.00 | | ALLOWANCE | |
| 07200 | building insulation | 20,000.00 | | estimate | R-30 & Alfoil 4.2 & iconene |
| 07300 | caulking & sealants | 1,000.00 | | estimate | si kaflex, etc. |
| | **DOORS, WINDOWS & GLASS** | | | | |
| 08010 | metal doors | | | | |
| 08020 | metal windows | | | | |
| 08030 | wood doors | 101,422.50 | | Ultimate Door - **Bid** | doors & fixed glass |
| 08040 | wood windows | 76,319.68 | | Windowscapes - **Bid** | Peachtree Windows & Ext. Jambs |
| 08045 | window installation | 27,200.00 | | SF Wind& Door Install - **Bid** | install doors/fixed glass/windows/bucks |
| 08050 | glass & glazing | - | | NIC | No glass on trellis area |
| 08100 | tub & shower enclosure | 10,000.00 | | ALLOWANCE | |
| 08110 | mirrors | 4,000.00 | | ALLOWANCE  reduced | over vanities |

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | | | JOB NAME: Mr. & Mrs. Gary Nicklaus | | JOB ADDRESS: Lot 13, The Bear's Club **Main House Only** |
| 08120 | medicine cabinets | | | | |
| 08130 | skylights | NIC | | | N/A |
| | **FINISHES** | | | | |
| 09010 | drywall interior | 66,700.00 | | Intracoastal - **Bid** | 5/8" walls, 5/8" ceilings |
| 09030 | metal studs | 68,040.00 | | Intracoastal - **Bid** | incl. dropped ceilings/incl 1 5/8" walls |
| 09100 | stucco exterior | 135,000.00 | | estimate | |
| 09120 | misc. stucco | | | | none |
| 09200 | paint exterior | 178,200.00 | | Hilmac - **Bid** | ext. & int./stairs/cypress clg/beams |
| 09210 | paint interior | | | | incl. in 09200 |
| 09220 | wallcovering allowance | | | NIC | By Owner |
| 09300 | closet maid shelving | - | | NIC | By Owner |
| 09400 | marble tile - bathrooms | | | | incl. in 09420 |
| 09410 | ceramic tile - other | | | | incl. in 09420 |
| 09420 | marble floors/walls | 100,000.00 | | ALLOWANCE - reduced | all interior floors & baths (exc. Carpet) |
| 09430 | marble sills | | | | |
| 09440 | marble tops | 10,000.00 | | ALLOWANCE | bathrooms, laundry, tub skirt |
| 09445 | granite tops | 25,000.00 | | ALLOWANCE | kitchen, bar, bbq |
| 09460 | bathroom accessories | | | NIC | |
| 09500 | carpet allowance | | | ALLOWANCE | |
| 09510 | misc. flooring (wood, etc.) | 20,000.00 | | ALLOWANCE | beds & closets & 2nd floor |
| 09600 | ceiling dome | | | | incl. in 09420 ALLOWANCE |
| | **MISC. SPECIALTIES** | | | ALLOWANCE - reduced | N/A |
| 10010 | pool & spa installed | 55,000.00 | | ALLOWANCE - reduced | rear pool |
| 10020 | fountain | 15,000.00 | | ALLOWANCE | spa & waterfall @ master |
| 10030 | misc. pool accessories | 3,500.00 | | estimate | pool child barrier fence |
| 10100 | screen enclosure/fence | 18,000.00 | | ALLOWANCE | perimeter fence only (700 lf @ $25) |
| 10200 | pool deck finish & decks | 75,000.00 | | ALLOWANCE | hardscape & deck |
| 10300 | hurricane shutters | 12,000.00 | | estimate | decorative only-8 bahama/4 sets shtrs |
| 10400 | elevator | - | | NIC | DELETED |
| 10500 | ironing center | | | ALLOWANCE | N/A |
| 10600 | prefab ceiling dome | 400.00 | | | N/A |
| 10700 | aquarium | - | | NIC | By Owner |
| | **APPLIANCES** | | | | |

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | **JOB NAME:** Mr. & Mrs. Gary Nicklaus | | | **JOB ADDRESS:** Lot 13, The Bear's Club Main House Only | |
| 11010 | all appliances | 35,000.00 | | ALLOWANCE reduced | all appliances |
| 11100 | BBQ grill (gas/electric) | | | | incl in 11010 |
| 11110 | BBQ hood | | | | incl in 11010 |
| 11120 | central vacuum | 4,990.00 | | Communicable - **Bid** | 2 AV-3500 air vac (deduct 660 - 1 unit) |
| | **MECHANICAL** | | | | |
| 15010 | plumbing | 31,500.00 | | Coastal Plumbing - **Bid** | labor/piping/install |
| 15020 | plumbing fixtures | 35,000.00 | | ALLOWANCE reduced | all tubs.toilest,faucets,HWH, etc. |
| 15030 | plumbing fitting allow. | NIC | | | |
| 15040 | special drainage | 9,000.00 | | estimate | pipe to drains (property perimeter) |
| 15100 | gas tank & lines | 6,800.00 | | estimate | cooktop,BBQ,HWH,dryer,fireplaces |
| 15120 | gas heater - spa | | | | incl. in pool allowance |
| 15200 | air conditioning | 65,393.00 | | Davis A/C - **Bid** | 6 units @13 seer-Trane/ vent baths |
| 15210 | special heating | | | | NO linear grills figured |
| 15220 | venting | 1,000.00 | | estimate | incl 1 vent (hood incl. in 11010 |
| 15230 | roof exhaust fans | | | | N/A |
| | **ELECTRICAL** | | | | |
| 16010 | electrical installation | 73,567.00 | | Conner Electric - **Bid** | 600 AMP-no lighting system |
| 16020 | elect. fixture allow. | NIC | | By Owner | |
| 16030 | misc elect requirements | NIC | | | generator not included |
| 16040 | ceiling fans | NIC | | By Owner | |
| 16100 | phone system | 7,360.00 | | Communicable - **Bid** | prewire only (CATV,DSS,DATA) +pnls |
| 16200 | security system | 7,740.00 | | Communicable - **Bid** | oper. opng, 12 smoke detectors, 2 gas |
| 16300 | entertainment system | 6,700.00 | | Communicable - **Bid** | prewire only w/Klipsch 6.5" ceil spkrs. |
| 16400 | lightning protection | NIC | | | not included |
| 16500 | lighting control system | NIC | | | not included |
| | | | | | |
| | **COST TO BUILD** | 2,934,614.18 | | | |
| | **CONTIGENCY** | | | | |
| | OVERHEAD/SUPERVISION | 293,461.42 | | | 10% of cost to build |
| | REAL ESTATE COMMISSION | 269,984.50 | | Bear's Club Realty | 8% Cost + Fee vs. Selling Price |
| | LAND & INTEREST | | | | |
| | PROFIT | 146,730.71 | | | 5% of cost to build |

JOB NAME: Mr. & Mrs. Gary Nicklaus

JOB ADDRESS: Lot 13, The Bear's Club Main House Only

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | SELLING PRICE | $ 3,644,790.81 | | | |
| | PRICE / SF | $ 392.93 | - | TOTAL A/C | 9276 |
| | | $ 242.73 | | TOTAL UNDER ROOF | 12090 |
| | LEGEND | RED | | estimated items & questions | |
| | | GREEN | | Reduced ALLOWANCES per owner or DELETED | |

LAVELLE CONSTRUCTION AND DEVELOPMENT CORP.
801 Maplewood Drive, Suite 3
Jupiter, FL 33458
561-748-6844   fax 561-748-6845

BID SHEET
revised (B) 8/28/06

JOB NAME: Mr. & Mrs. Gary Nicklaus          JOB ADDRESS: Lot 13, The Bear's Club

| ACCOUNT NO | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | **GENERAL CONDITIONS** | | | | |
| 01010 | survey | 3,700.00 | | estimate | thru final |
| 01020 | drawings & specs | 110,000.00 | | **Paradigm Architects** | arch fees and prints |
| 01030 | engineering | 1,000.00 | | | framing inspection |
| 01040 | perc test | | | | |
| 01050 | soil boring test | 2,100.00 | | estimate | borings, compaction, stem wall, etc. |
| 01060 | sewer connect/septic tank | | | Encon | by developer |
| 01070 | water meter/well pump | 8,000.00 | | Jupiter-water estimate increas | 1" meter (for 1-1/2" meter add $7500) |
| 01080 | utilities | 4,000.00 | | estimate | temp power, water, A/C |
| 01090 | chemical toilets | 2,520.00 | | estimate | 18 months @$90 + 2nd for 10 months |
| 01200 | building permit | 27,500.00 | | estimate-Town of Jupiter | added $2500 POA fee |
| 01210 | capitol improvement fee | | | | incl in 01200 |
| 01300 | trash removal | 10,000.00 | | estimate | dumpsters & labor |
| 01310 | final clean up | 5,000.00 | | estimate | entire interior/exterior |
| 01320 | site trailer | 4,500.00 | | estimate | |
| 01330 | temp. fencing | 500.00 | | estimate | silt fence |
| 01340 | misc. labor | 5,500.00 | | estimate | clean up, etc. |
| | **SITEWORK** | | | | |
| 02005 | demolition | | | | |
| 02010 | excavating/grading | 6,000.00 | | estimate | |
| 02020 | tree removal | 15,000.00 | | ALLOWANCE | remove & haul |
| 02030 | lot fill | 32,000.00 | | ALLOWANCE | 3500 @ 7/cy (fill & place) |
| 02050 | compaction | 4,500.00 | | | rental & labor |
| 02060 | soil treatment | 3,400.00 | | estimate | .13/sf soil treat, 2.50 lf centricon |
| 02070 | footing tractor time | | | | incl. in 03010 |
| 02080 | final grading | 3,500.00 | | estimate | 50 hrs @ $65/hr |
| 02100 | landscape allowance/spec | 100,000.00 | | **ALLOWANCE** | |
| 02110 | sprinkler system | 18,000.00 | | ALLOWANCE | |

Page 1 of 5

JOB NAME: Mr. & Mrs. Gary Nicklaus | JOB ADDRESS: Lot 13, The Bear's Club

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| 02120 | irrigation pump & well | 1,500.00 | | ALLOWANCE | |
| | **CONCRETE** | | | | |
| 03005 | shell | | | | |
| 03010 | slab concrete | 84,862.00 | | Sun Deck - Bid | complete slab-no patio |
| 03020 | pump mix concrete | | | incl. in 03010 | beam in 06300 |
| 03030 | pump cost | | | incl. in 03010 | beam in 06300 |
| 03040 | light weight/special conc | | | | |
| 03050 | walks, patios, steps | | | | |
| 03080 | driveways & walkways | 12,500.00 | | estimate | |
| 03100 | concrete finish | 36,000.00 | | ALLOWANCE | 9000 sf @ $4/sf |
| 03110 | special finish | 1,000.00 | | estimate | incl. in 03010 (patio extra) |
| 03120 | concrete sealer | 30,000.00 | | estimate | 2nd floor epicore/hollow core |
| 03200 | misc. concrete items | | | | none |
| 03210 | cylindrical column forms | 3,500.00 | | estimate | gyprcrete/cut saw/etc. |
| | **MASONRY** | | | | |
| 04010 | structural walls | 66,000.00 | | estimate | 4 course stem wall |
| 04020 | fireplace | 25,000.00 | | ALLOWANCE | (2) fireplaces,doors,logs & mantels |
| 04030 | exterior brick/stone | 95,000.00 | | estimate | 2220 sf stone + precast sills |
| 04040 | interior brick/stone | - | | NIC | wood columns see 06050 |
| 04060 | planters/privacy walls | 4,000.00 | | estimate | |
| 04100 | glass block | | | | |
| | **METAL WORK** | | | | |
| 05010 | foundation steel | | | | incl. in 03010 |
| 05030 | column steel | | | | incl. in 06300 |
| 05040 | beam steel | | | | incl. in 06300 |
| 05050 | misc. steel items | 3,000.00 | | estimate | straps,redheads,bolts,embeds,etc. |
| 05060 | aluminum/steel posts | | | | incl. in 06300 |
| 05070 | welding | | | | |
| 05100 | ornamental metals | 15,000.00 | | estimate | exterior rail/window grates/awn.supp. |
| | | | | | 120 lf @ $85/lf + (2) grates |
| | **LUMBER,CARP.,MILL.,TRUSS** | | | | |
| 06010 | complete lumber estimate | 15,000.00 | | estimate | rough lumber (most incl. in 06300) |
| 06050 | finish trim lumber | 120,000.00 | | estimate | base,case,doors,crown |
| 06060 | interior doors | | | | incl. in 06050 |
| 06070 | exterior doors | | | | incl. in 08030 |
| 06080 | front door allowance | 12,000.00 | | ALLOWANCE | incl. installation |

JOB NAME: Mr. & Mrs. Gary Nicklaus | JOB ADDRESS: Lot 13, The Bear's Club

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| 06090 | garage doors & openers | 11,000.00 | | estimate | metal doors Dade Co. (wood incl-trim) |
| 06100 | wood den | 75,000.00 | | ALLOWANCE | library cabinetry |
| 06110 | stairs and railing | 50,000.00 | | ALLOWANCE | 2 stairs & int. rail (incl. tr & risers) |
| 06120 | misc. millwork | 10,000.00 | | ALLOWANCE | trellis work |
| 06130 | cabinet allowance | 125,000.00 | | ALLOWANCE | all cabinets (NO TOPS) |
| 06140 | closet built-ins | 25,000.00 | | ALLOWANCE | |
| 06200 | hardware allowance | 6,500.00 | | ALLOWANCE | incl $1000 front door |
| 06210 | finish carpentry | 110,000.00 | | estimate | int & ext trim labor |
| 06230 | safe | | | | not included |
| 06300 | carpentry labor | 340,000.00 | | Premier Shell - Bid | rough thru roof/misc punch/conc/steel |
| 06400 | roof trusses | 25,000.00 | | TJ Truss - Bid | |
| 06410 | wood beams | | | | incl in trim 06050 |
| 06450 | crane for steel | | | | incl. in 06300 |
| | **MOISTURE PROTECTION** | | | | |
| 07010 | tile/shake roof | 183,248.00 | | RTS - Bid | Artezano Clay Barrel Tile |
| 07100 | rain gutters | 4,000.00 | | ALLOWANCE | |
| 07200 | building insulation | 20,000.00 | | estimate | R-30 & Alfoil 4.2 & iconene |
| 07300 | caulking & sealants | 1,000.00 | | estimate | si kaflex, etc. |
| | **DOORS, WINDOWS & GLASS** | | | | |
| 08010 | metal doors | | | | |
| 08020 | metal windows | | | | |
| 08030 | wood doors | 101,422.50 | | Ultimate Door - Bid | doors & fixed glass |
| 08040 | wood windows | 76,319.68 | | Windowscapes - Bid | Peachtree Windows & Ext. Jambs |
| 08045 | window installation | 27,200.00 | | SF Wind& Door Install - Bid | install doors/fixed glass/windows/bucks |
| 08050 | glass & glazing | - | | NIC | No glass on trellis area |
| 08100 | tub & shower enclosure | 10,000.00 | | ALLOWANCE | |
| 08110 | mirrors | 4,000.00 | | ALLOWANCE | over vanities |
| 08120 | medicine cabinets | NIC | | ALLOWANCE | N/A |
| 08130 | skylights | | | | |
| | **FINISHES** | | | | |
| 09010 | drywall interior | 66,700.00 | | Intracoastal - Bid | 5/8" walls, 5/8" ceilings |
| 09030 | metal studs | 68,040.00 | | Intracoastal - Bid | incl. dropped ceilings/incl 1 5/8" walls |
| 09100 | stucco exterior | 135,000.00 | | estimate | |
| 09120 | misc. stucco | | | | none |
| 09200 | paint exterior | 178,200.00 | | Hilmac - Bid | ext. & int /stairs/cypress clg/beams |
| 09210 | paint interior | | | | incl in 09200 |

JOB NAME: Mr. & Mrs. Gary Nicklaus | JOB ADDRESS: Lot 13, The Bear's Club

| ACCOUNT NO. | ACCOUNT DESCRIPTION | BID PRICE | REVISED BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| 09220 | wallcovering allowance | | | NIC | By Owner |
| 09300 | closet maid shelving | 5,000.00 | | ALLOWANCE | By Owner |
| 09400 | marble tile - bathrooms | | | | incl. in 09420 |
| 09410 | ceramic tile - other | | | | incl. in 09420 |
| 09420 | marble floors/walls | 100,000.00 | | ALLOWANCE | all interior floors & baths (exc. Carpet) |
| 09430 | marble sills | | | | |
| 09440 | marble tops | 10,000.00 | | ALLOWANCE | bathrooms, laundry, tub skirt |
| 09445 | granite tops | 25,000.00 | | ALLOWANCE | kitchen, bar, bbq |
| 09450 | bathroom accessories | | | NIC | |
| 09500 | carpet allowance | 20,000.00 | | ALLOWANCE | beds & closets & 2nd floor |
| 09510 | misc. flooring (wood, etc.) | - | | | incl. in 09420 ALLOWANCE |
| 09600 | ceiling dome | | | | N/A |
| | **MISC. SPECIALTIES** | | | | |
| 10010 | pool & spa installed | 55,000.00 | | ALLOWANCE | rear pool |
| 10020 | fountain | 15,000.00 | | ALLOWANCE | spa & waterfall @ master |
| 10030 | misc. pool accessories | 3,500.00 | | estimate | pool child barrier fence |
| 10100 | screen enclosure/fence | 18,000.00 | | ALLOWANCE | perimeter fence only (700 lf @ $25) |
| 10200 | pool deck finish & decks | 75,000.00 | | ALLOWANCE | hardscape & deck |
| 10300 | hurricane shutters | 12,000.00 | | estimate | decorative only-8 bahama/4 sets shtrs |
| 10400 | elevator | | | NIC | DELETED |
| 10500 | ironing center | 400.00 | | ALLOWANCE | |
| 10600 | prefab ceiling dome | | | | N/A |
| 10700 | aquarium | 10,000.00 | | ALLOWANCE | |
| | **APPLIANCES** | | | | |
| 11010 | all appliances | 40,000.00 | | ALLOWANCE | all appliances |
| 11100 | BBQ grill (gas/electric) | | | | incl in 11010 |
| 11110 | BBQ hood | | | | incl in 11010 |
| 11120 | central vacuum | 4,990.00 | | Communicable - Bid | 2 AV-3500 air vac (deduct 660 - 1 unit) |

JOB NAME: Mr. & Mrs. Gary Nicklaus | JOB ADDRESS: Lot 13, The Bear's Club

| ACCOUNT NO | ACCOUNT DESCRIPTION | REVISED BID PRICE | BID PRICE | SUBCONTRACTOR OR ESTIMATE | REMARKS |
|---|---|---|---|---|---|
| | **MECHANICAL** | | | | |
| 15010 | plumbing | | | Coastal Plumbing - **Bid** | labor/piping/install |
| 15020 | plumbing fixtures | | 31,500.00 | **ALLOWANCE** | all tubs,toilest,faucets,HWH, etc. |
| 15030 | plumbing fitting allow. | | 40,000.00 | | |
| 15040 | special drainage | | NIC | | |
| 15100 | gas tank & lines | | 9,000.00 | estimate | pipe to drains (property perimeter) |
| 15120 | gas heater - spa | | 6,800.00 | estimate | cooktop,BBQ,HWH,dryer,fireplaces |
| 15200 | air conditioning | | | Davis A/C - **Bid** | incl. in pool allowance |
| 15210 | special heating | | 65,393.00 | **ALLOWANCE** | 6 units @13 seer-Trane/ vent baths |
| 15220 | venting | | 10,000.00 | estimate | allow for some linear diffusers |
| 15230 | roof exhaust fans | | 1,000.00 | | incl 1 vent (hood incl. in 11010 |
| | | | | | N/A |
| | **ELECTRICAL** | | | | |
| 16010 | electrical installation | | 73,567.00 | Conner Electric - **Bid** | 600 AMP-no lighting system |
| 16020 | elect. fixture allow. | | 25,000.00 | **ALLOWANCE** | |
| 16030 | misc elect requirements | | 42,000.00 | **ALLOWANCE** | 100kw generator |
| 16040 | ceiling fans | | 4,000.00 | **ALLOWANCE** | |
| 16100 | phone system | | 7,360.00 | Communicable - **Bid** | prewire only (CATV,DSS,DATA) +pnls |
| 16200 | security system | | 7,740.00 | Communicable - **Bid** | oper. opng. 12 smoke detectors, 2 gas |
| 16300 | entertainment system | | 80,000.00 | **ALLOWANCE** | wiring/speakers/equipment |
| 16400 | lightning protection | | NIC | | not included |
| 16500 | lighting control system | | NIC | | not included |
| | COST TO BUILD | | 3,340,962.18 | | |
| | CONTINGENCY | - | | | |
| | OVERHEAD/SUPERVISION | | 334,096.22 | | 10% of cost to build |
| | REAL ESTATE COMMISSION | | 307,368.52 | Bear's Club Realty | 8% Cost + Fee vs. Selling Price |
| | LAND & INTEREST | - | | | |
| | PROFIT | | 167,048.11 | | 5% of cost to build |
| | SELLING PRICE | | $ 4,149,475.03 | | |
| | PRICE / SF | | $     447.33 | TOTAL A/C | 9276 |
| | | | $     276.34 | TOTAL UNDER ROOF | 12090 |

Page 5 of 5



# COMMERCIAL GENERAL LIABILITY POLICY

## DECLARATIONS

**POLICY NUMBER: GLO 131162**

| | |
|---|---|
| **DATE ISSUED:** July 8, 2008 | **REPLACEMENT OF:** New |

| ITEM 1. | **NAMED INSURED & ADDRESS:** Lavelle Construction & Development Corp. |
|---|---|
| | 801 Maplewood Drive, #3 |
| | Jupiter, FL 33458 |
| | Named Insured's Business: General Contractor     Form of Business:  Corporation |

| 2. | **POLICY PERIOD: POLICY COVERS FROM:** 07/01/08     **TO:** 07/01/09 |
|---|---|
| | 12:01 a.m. Standard Time at the Named Insured's address stated above |

| 3. | **COVERAGE IS PROVIDED BY:** | **REPRESENTATIVE:** |
|---|---|---|
| | | Number: 82874 |
| | Crum & Forster Specialty Insurance Company | Broker:     Crump Insurance Services of FL |
| | ( A Stock Company) | Telephone Number: (407) 678-4552 |
| | 305 Madison Avenue | Office Address:     1211 State Rd. 436, Ste. 227 |
| | Morristown, NJ 07962 | Town, State & Zip:  Casselberry, FL 32707 |

| 4. | **LIMITS OF INSURANCE:**     (The Limits of Insurance are the amounts shown below.) | |
|---|---|---|
| | (a) GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | $2,000,000 |
| | (b) PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| | (c) PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| | (d) EACH OCCURRENCE LIMIT | $1,000,000 |
| | (e) DAMAGE TO PREMISES RENTED TO YOU LIMIT | $50,000 |
| | (f) MEDICAL EXPENSE LIMIT | $ Excluded |

| 5. | **SELF INSURED RETENTION:** $25,000 |
|---|---|
| | Applies ☐   Per Claim |
| | Applies ☒   Per Occurrence |

| 6. | **POLICY JACKET, SCHEDULES, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION** (Number and Edition Date) **AS PER MASTER FORMS LIST ATTACHED.** |
|---|---|
| | Location of All Premises You Own, Rent or Occupy: See Schedule of Locations on file with Company. |

| 7. | **DEPOSIT PREMIUM:** $85,000        **MINIMUM ANNUAL PREMIUM:** $85,000 |
|---|---|
| | PREMIUM SUBJECT TO ADJUSTMENT: Yes ☒   No ☐ |

Authorized Representative

THESE DECLARATIONS, TOGETHER WITH POLICY JACKET, MASTER FORMS LIST, SCHEDULES AND
ENDORSEMENTS, IF ANY, ARE ISSUED AS PART OF, AND IN THE COMPLETION OF THE ABOVE NUMBER POLICY.

CGLDecDedOcc 09 13 05

This insurance is issued pursuant to the Florida Surplus Lines law. Persons insured by surplus lines
carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery
for the obligation of an insolvent unlicensed insurer.

**Crum & Forster Specialty Insurance Company**
**An Arizona Corporation**
**Home Office: Phoenix, AZ**

(A Capital Stock Company)

SIGNATURE

Mary Jane Robertson
President

SIGNATURE

Felicia Garland
Secretary

GEN 007 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MASTER FORMS LIST**

The following forms and endorsements are attached to this policy effective at inception:

| FORM TITLE | FORM NUMBER |
|---|---|
| Declarations Page | CGLDecDedOcc 09 13 05 |
| Signature Page – Crum & Forster Specialty | GEN 007 (0907) |
| Master Forms List | GEN 0001 |
| Absolute Asbestos Exclusion | CFSGL 202 (0500) |
| Absolute Silica/Silicosis | CFSGL 189 (0106) |
| Additional Insured – Owners, Lessees or Contractors | CG 2037 (0704) |
| Additional Insured – Owners, Lessees or Contractors | CG 2010 (0704) |
| Commercial General Liability Coverage Form | CG 0001 1204 |
| Common Policy Conditions | IL 0017 1198 |
| Computer Related and Other Electronic Problems Exclusion | CFSGL 211 (0503) |
| Continuous or Progressive Injury and Damage Exclusion | CFSGL163 (0405) |
| Cross Liability Exclusion | CFSGL212 (0902) |
| Definition of Gross Sales | CFSGL 186 (0106) |
| Designated Construction Project(s) General Aggregate Limit with Cap | CFSGL 118 |
| Disclosure Pursuant to Terrorism Insurance Act | IL 0985 (0108) |
| Earned Premium & Composite Rate Endorsement | CFSGL 185 (0608) |
| EIFS/DEFS Exclusion | CFSGL 216 |
| Employee Benefits Liability Coverage | CG 0435 (0202) |
| Employment Related Practices Exclusion | CG 2147 (0798) |
| Exclusion – Blasting | CFSGL 126 |
| Exclusion of Certified Acts of Terrorism | CG 2173 (0108) |
| Exclusion – Contractors Professional Liability | CG 2279 (0798) |
| Exclusion – Coverage C Medical Payments | CG 2135 (1001) |
| Exclusion – Designated Operations Covered by a Consolidated (Wrap Up) | CG 2154 (0196) |
| Exclusion – Engineers, Architects or Surveyors Professional Liability | CG 2243 (0798) |
| Exclusion – Fiduciary or Representative Liability of Financial Institutions | CG 2238 (0798) |
| Exclusion – Real Estate Agents or Brokers Errors or Omissions | CG 2301 (1204) |
| Exclusion – Violation of Statutes that Govern Emails, Fax Phone Calls or other Methods of Sending Material | CG 0067 (0305) |
| Fungi or Bacteria Exclusion | CG 2167 (0402) |
| Independent Contractor(s) Insurance Agreement | CFSGL114 (0505) |
| Lead Exclusion | CFSGL 223 (0999) |
| Nuclear Energy Liability Exclusion Endorsement | IL 0021 0498 |
| Occupational Disease Exclusion | CFSGL 226 (0999) |
| Prior Operations and Completed Operations Exclusion | CFSGL180 (1005) |
| Punitive or Exemplary Damages Exclusion | CFSGL 231 (1189) |
| Self-Insured Retention Endorsement | CFSGL164a (0505) |
| Service of Process Clause | CFSGL 254 |
| State Operations Exclusion | CFSGL158 (1204) |
| Subsidence and Earth Movement Endorsement | CFSGL 235 (0308) |
| Total Pollution Exclusion with a Hostile Fire Exception | CG 2155 (0999) |
| Waiver of Transfer of Rights of Recovery | CG 2404 (1093) |

GEN 0001

# ABSOLUTE ASBESTOS EXCLUSION

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal or advertising injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

CFSGL202  05 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# ABSOLUTE SILICA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART:

It is agreed that:

1. This policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica, or any product or action used or taken to protect any person from exposure to silica in any form.

2. This policy does not apply to "economic loss", "diminution of property", "abatement costs", or any other loss, cost, or expense including "Equitable Relief", in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

3. This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.
   For the purpose of this exclusion only, the following additional terms are defined:

   "Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

   "Diminution of property" means the diminishing or lessening in value of property.

   "Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

   "Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

CFSGL 189 01 06

POLICY NUMBER: GLO 131162

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| As required by written contract. | As required by written contract. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

© ISO Properties, Inc., 2004

POLICY NUMBER:  GLO 131162

**COMMERCIAL GENERAL LIABILITY**
CG 20 10 07 04

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| As required by written contract. | As required by written contract. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04                    © ISO Properties, Inc., 2004                    Page 1 of 1         □

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

  **a. Expected Or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Copyright, ISO Properties, Inc., 2003

**(i)** Any insur... or
**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way re-

(parts to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

Copyright, ISO Properties, Inc., 2003

Case 0:09-cv-60077-XXXX Document 1 Entered on FLSD Docket 05/08/2009 Page 51 of 78

**Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

CG 00 01 12 04 Copyright, ISO Properties, Inc., 2003 Page 5 of 14

51 of 156

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All costs taxed against the insured in the "suit".

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

      **(1)** Agrees in writing to:

         **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

         **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

         **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      **(2)** Provides us with written authorization to:

         **(a)** Obtain records and other information related to the "suit"; and

         **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be

Copyright, ISO Properties, Inc., 2003

Case 9:03-cv-80070-DTKH Document 1 Entered on FLSD Docket 05/08/2009 Page 53 of 78

organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage **C**;

    b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage **A**; and

    b. Medical expenses under Coverage **C**

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12

months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

    (2) The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

Copyright, ISO Properties, Inc., 2003

your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

**a.** The U.S. of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in **a.** above;

   **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

Copyright, ISO Properties, Inc., 2003

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "em-

Copyright, ISO Properties, Inc., 2003

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

   Copyright, Insurance Services Office, Inc., 1998     □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMPUTER RELATED AND OTHER ELECTRONIC PROBLEMS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

2. Exclusions

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of:

1.   any actual or alleged failure, malfunction or inadequacy of:

a. any of the following, whether belonging to any insured or to others:
    (1) Computer hardware, including microprocessors;
    (2) Computer application software;
    (3) Computer operating systems and related software;
    (4) Computer networks
    (5) Microprocessors (computer chips) not part of any computer system; or
    (6) Any other computerized or electronic equipment or components; or

b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph a. above due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times, including the year 2000 and beyond.

2. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any insured to determine, rectify or test for, any potential or actual problems described in paragraph 1.above.

Countersigned by _____
                            Authorized Representative

CFSGL 211 0503

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**

In consideration of the premium charged, it is hereby understood and agreed that this insurance does not apply to "bodily injury" or "property damage" which has first occurred , or alleged to have first existed, or begun to occur prior to the effective date of this policy, regardless of whether:

(1) such "bodily injury" or "property damage" continues to occur, for any reason, on or after the effective date of this policy; and/or,

(2) repeated or continued exposure to conditions, which caused such "bodily injury" or "property damage", occurs on or after the effective date of this policy, and causes additional, progressive or further "bodily injury" or "property damage".

This exclusion applies whether or not the insured's legal obligation to pay damages has been established as of the effective date of this policy.

CFSGL163 (0405)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION 1 – COVERAGES):

This policy does not apply to any "bodily injury", "property damage", or "personal and advertising injury" claims or "suits" brought by any Named Insured against any other Named Insured.

CFSGL 212 (0902)

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## <u>DEFINITION OF GROSS SALES</u>

1.     **Definition**
       The gross amount charged by the Named Insured, concessionaires of the Named Insured
       or by others trading under the insured's named for:

       a.     All goods or products sold or distributed during the Policy Period;
       b.     Operations performed during the Policy Period; and
       c.     Rentals during the Policy Period;
       d.     Dues or fees during the Policy Period.

2.     **Inclusions**
       The following items shall not be deducted from gross sales as determined above:

       a.     Foreign exchange discounts;
       b.     Freight allowance to customers;
       c.     Total sales of consigned goods and warehouse receipts;
       d.     Trade or cash discounts;
       e.     Bad debts; and
       f.     Repossession of items sold on installments (amounts actually collected).

3.     **Exclusions**
       The following items shall be deducted from gross sales:

       a.     Sales or excise taxes which are collected and submitted to a governmental
              division;
       b.     Credits for repossessed merchandise and products returned.  Allowances for
              damaged and spoiled goods;
       c.     Finance charges for items sold on installments;
       d.     Freight charges on sales if freight is charged as a separate item on customer's
              invoice; and
       e.     Royalty income from patent rights or copyrights which are not product sales.

This endorsement is a part of your policy and takes effect on the effective date of your policy,
unless another effective date is shown below.

---

| |
|---|
| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. <br> Policy #_____ <br> Effective on and after _____12:01 am standard time <br> Issued to _____ |

Countersigned by _____Date:_____
                          Authorized Representative

CFSGL186 (0106)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT WITH CAP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

SCHEDULE

Designated Construction Projects:

**All projects where required by written contract.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   1.  A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

     However, the most we will pay under the Designated Construction Project General Aggregate Limit for all projects combined is $5,000,000.

   2.  The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazards", regardless of the number of:

     a.  Insureds;
     b.  Claims made or "suits" brought; or
     c.  Persons or organizations making claims or bringing "suits".

   3.  Any payments made under COVERAGE A for damages shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

CFSGL118

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply.  However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE A for damages shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

D. If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E. The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

CFSGL118

POLICY NUMBER: GLO 131162

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| |
|---|
| **Terrorism Premium (Certified Acts) $     NOT COVERED**<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**<br><br><br><br>**Additional information, if any, concerning the terrorism premium:** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007



# ENDORSEMENT

This endorsement, issued by **CRUM & FORSTER SPECIALTY INSURANCE COMPANY,** forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE ENDORSEMENT

In consideration of Crum & Forster's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1.  In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than 90 days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Within the first 90 days of coverage under this insurance, a twenty-five percent (25%) absolute minimum earned premium is applicable, unless another higher premium is designated specifically as a minimum premium in the declarations.

2.  Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy. Cancellation shall be computed in accordance with paragraph 1 above.

3.  In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.  A twenty five percent (25%) absolute minimum earned premium shall apply.

4.  The premium entered on the Declarations page of this policy as DEPOSIT PREMIUM is a provisional premium only and is subject to upward adjustment only in accordance with our rules, rates and the Premium Audit provisions of this policy. This policy has a Minimum Annual Premium that applies to the term of insurance as shown on the policy declarations. Unless otherwise stated below, the Minimum annual Premium is equal to the Deposit Premium as shown in the declarations page. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect, but may be done by the Company while the policy is in effect.

    Minimum Annual Premium is 100% of the Deposit Premium as stated in the policy declarations.

Page 1 of 2

5. The amount entered as DEPOSIT PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

| Exposure Base | Estimated Exposure | X | Composite Rate | = | DEPOSIT PREMIUM |
|---|---|---|---|---|---|
| Gross Sales | $17,000,000 | X | $5.00 | = | $85,000 |
| Uninsured Subcontractor Cost (Per CFSGL114) | TBD | X | $35.00 | = | TBD |

If the Exposure Basis is Payroll, then the Composite Rate shall be applied per thousand dollars of Payroll.  If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales.  If the exposure is Cost, then the composite rate shall be applied per thousand dollars of cost. If the exposure is Units, then the composite rate shall be applied per unit.

Page 2 of 2

CFSGL185 (0608)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EIFS/DEFS EXCLUSION

This insurance does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising directly or indirectly out of "your EIFS/DEFS product" or "your EIFS/DEFS work" as defined below.

"Your EIFS/DEFS product" means:

The following goods or products manufactured, sold, handled, distributed or disposed of by you, others trading under your name, or by any other or person or entity directly or indirectly for you or on your behalf:

1.  "Exterior insulation and finish system", defined as an exterior cladding or finish system used on any part of any structure, and consisting of:

    a.  rigid or semi-rigid insulation board made of expanded polystyrene or other materials; and
    b.  the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; and
    c.  a reinforced base coat, or base coat and mesh; and
    d.  a finish coat, providing a surface texture, to which coat color may be added.

2.  "Direct exterior finish system", defined as an exterior cladding or finish system used on any part of any structure, and consisting of:

    a.  sheathing applied to a structure's framing or substrate; and
    b.  a reinforced base coat; or base coat and mesh; and
    c.  a finish coat providing surface texture, to which coat color may be added.

"Your EIFS/DEFS product" includes:
    i.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance of "your product"; and,
    ii. The providing of or failure to provide warnings or instructions.

"Your EIFS/DEFS work" means:
The following work or operations performed by you or by any person or entity working directly or indirectly for you or on your behalf:

1.  The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, repair, including remodeling, service, correction or replacement of an "exterior insulation and finish system", or a "direct exterior finish system", or any part of either system, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

Page 1 of 2

CFSGL 216

2.  Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" or a "direct exterior finish system" is used on any part of that structure.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| |
|---|
| Complete only when this endorsement is not prepared with the policy or is not to be effective with the policy. |
| Policy # _____ |
| Effective on and after _____12:01 am standard time. |
| Issued to _____ |

Countersigned by _____
                              Authorized Representative

Page 2 of 2

POLICY NUMBER: GLO 131162

COMMERCIAL GENERAL LIABILITY
CG 04 35 02 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|----------|--------------------|--------------|------------|--------------|---------|
| Employee Benefits Programs | $1,000,000 | each employee | $1,000 | each employee | $ Incl. |
| | $1,000,000 | aggregate | | | |
| Retroactive Date: | 07/01/08 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **E.** (Section III – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

CG 04 35 02 02

© ISO Properties, Inc., 2001

Page 1 of 6

(2) When we make settlement in accordance with Paragraph **1.a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

## 2. Exclusions

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

2. Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **4.** of **Section II – Who Is An Insured** are replaced by the following:

2. Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

Page 2 of 6 © ISO Properties, Inc., 2001 CG 04 35 02 02   ☐

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b.  Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D.  For the purposes of the coverage provided by this endorsement, Paragraph **3.** of **Section II – Who Is An Insured** does not apply.

E.  For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

   **1. Limits Of Insurance**

   a.  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) "Claims" made or "suits" brought;

      (3) Persons or organizations making "claims" or bringing "suits";

      (4) Acts, errors or omissions; or

      (5) Benefits included in your "employee benefit program".

   b.  The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

   c.  Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      (1) An act, error or omission; or

      (2) A series of related acts, errors or omissions

      negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

   a.  Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   b.  The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   c.  The terms of this insurance, including those with respect to:

      (1) Our right and duty to defend any "suits" seeking those damages; and

      (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

      apply irrespective of the application of the deductible amount.

   d.  We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

   © ISO Properties, Inc., 2001

F.  For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a.  You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b.  If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c.  You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a.  **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b.  **Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

© ISO Properties, Inc., 2001

CG 04 35 02 02        □

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

  **a.** This endorsement is canceled or not renewed; or

  **b.** We renew or replace this endorsement with insurance that:

    **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

    **(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

  **a.** The "employee benefit programs" insured;

  **b.** Previous types and amounts of insurance;

  **c.** Limits of insurance available under this endorsement for future payment of damages; and

  **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **E.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **E.1.c.**

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

  **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

  **b.** Handling records in connection with the "employee benefit program"; or

  **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

© ISO Properties, Inc., 2001

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

© ISO Properties, Inc., 2001
CG 04 35 02 02

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98 Copyright, Insurance Services Office, Inc., 1997 Page 1 of 1 ☐

Policy No.  GLO 131162

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### EXCLUSION – BLASTING
### (SPECIFIED OPERATIONS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| SCHEDULE | |
|---|---|
| **Location & Description of Operations** | **Excluded Hazard(s)** |
| All Locations and/or all Projects and/or<br>all job sites where work is being performed by or on behalf of any Insured | Blasting |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  The following exclusion is added to paragraph 2., Exclusions in Section I – Coverages:

This insurance does not apply to "bodily injury" and "property damage" included within the "blasting hazard".

B.  The following definitions are added to the DEFINITIONS Section:

1.  "Blasting hazard" includes "bodily injury" and "property damage" arising out of blasting which means the use of explosive devices.

CFSGL126

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 73 01 08 © ISO Properties, Inc., 2007 Page 1 of 1 □

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

**2.** Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 22 79 07 98              Copyright, Insurance Services Office, Inc.,  1997                    Page 1 of 1      □

POLICY NUMBER: GLO 131162

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description And Location Of Premises Or Classification: |
| --- |
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage C – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

CG 21 35 10 01

© ISO Properties, Inc.,  2000

Page 1 of 1